UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHAWN R. WARD,                    )   Case No. SACV 04-1373-RC
                                  )
                Plaintiff,        )
                                  )
vs.                               )   OPINION AND ORDER
                                  )
JO ANNE B. BARNHART,              )
Commissioner of the Social       )
Security Administration,         )
                                  )
                Defendant.        )
_____ )

     Plaintiff Shawn R. Ward filed a complaint on December 9, 2004,
seeking review of the Commissioner's decision denying his application
for disability benefits.  The Commissioner answered the complaint on
April 15, 2005, and the parties filed a joint stipulation on June 3,
2005.


**BACKGROUND**

**I**

     On January 2, 2003, plaintiff applied for disability benefits
under Title II of the Social Security Act ("the Act"), 42 U.S.C. §
423, claiming an inability to work since December 13, 2001, due to

1  lower back pain and a herniated lumbar disc.  Certified Administrative
2  Record ("A.R.") 24-26, 57.  The plaintiff's application was denied on
3  June 9, 2003, and was again denied on April 22, 2003, following
4  reconsideration.  A.R. 21C-21K.  The plaintiff then requested an
5  administrative hearing, which was held before Administrative Law Judge
6  Barry S. Brown ("the ALJ") on June 1, 2004.  A.R. 22, 165-82.  On
7  June 16, 2004, the ALJ issued a decision finding plaintiff is not
8  disabled.  A.R. 8-16.  The plaintiff appealed this decision to the
9  Appeals Council, which denied review on November 5, 2004.  A.R. 4-7.

10
11                                    II
12     The plaintiff, who was born on March 18, 1973, is currently 32
13  years old.  A.R. 24, 168.  He has a twelfth-grade education and has
14  been trained as a real estate appraiser; he has previously worked as a
15  door installer, a computer board maker, and a golf equipment maker.
16  A.R. 38, 42, 58, 63, 87-109, 169-70.

17
18     The plaintiff injured his back while working on December 13,
19  2001, when a 150-pound garage door machine fell, knocking him
20  backward.  A.R. 73, 82.  On January 14, 2002, Jack O. Plasecki, M.D.,
21  an orthopedic surgeon, examined plaintiff and diagnosed him with a
22  lumbar spine musculoligamentous strain and sprain and a lumbar disc
23  herniation, concluded he was temporarily totally disabled for six
24  //
25  //
26  //
27  //
28  //

weeks, and prescribed physical therapy, Skelaxin[1] and Vicodin.[2]  A.R.
82-86.  On January 18, 2002, plaintiff underwent a lumbar spine MRI,
which revealed a grade I anterolisthesis of L5 on S1 related to L5
spondylosis[3] bilaterally, with subsequent moderately severe neural
foraminal narrowing, and degenerative disc disease at L4-L5, with a
posterior disc bulge but no neural foraminal or spinal canal
narrowing.  A.R. 66-67.  Lumbar spine x-rays taken February 22, 2002,
showed bilateral spondylosis and grade II, 2-cm. anterolisthesis of L5
on S1.  A.R. 68.  On July 19, 2002, Dr. Plasecki reevaluated plaintiff
and diagnosed him with a grade I spondylolisthesis[4] of L5 on S1, among
other things, A.R. 77-81, and determined plaintiff was permanent and
stationary and should be precluded from heavy lifting and repeated
bending and stooping.  A.R. 79-80.


    On June 27, 2002, Scott Haldeman, M.D., a neurologist, examined
plaintiff and diagnosed him with a strain of the lumbar soft tissue

---

[1]  Skelaxin "is indicated as an adjunct to rest, physical
therapy, and other measures for the relief of discomforts
associated with acute, painful musculoskeletal conditions."
Physician's Desk Reference, 1793 (59th ed. 2005).

[2]  Vicodin is used "for the relief of moderate to moderately
severe pain."  The PDR Family Guide to Prescription Drugs, 723
(8th ed. 2000).

[3]  Spondylosis is "a general term for degenerative changes
due to osteoarthritis."  Dorland's Illustrated Medical
Dictionary, 1684 (29th ed. 2000).

[4]  Spondylolisthesis is "forward displacement (olisthy) of
one vertebra over another, usually of the fifth lumbar over the
body of the sacrum, or of the fourth lumbar over the fifth,
usually due to a developmental defect of the pars
interarticularis."  Dorland's Illustrated Medical Dictionary at
1684.

musculoligamentous structures superimposed on spondylolysis[5] and
spondylolisthesis, with some degenerative changes and disc bulging,
but no neural entrapment or radiculopathy.  A.R. 69-76.  Dr. Haldeman
determined plaintiff was permanent and stationary, and should be
precluded from work requiring heavy lifting and repeated bending and
stooping.  A.R. 74.

On March 28, 2003, Ramin Ganjianpour, M.D., an orthopedic
surgeon, examined plaintiff and diagnosed him with spondylolisthesis
and degenerative disc disease of the lower lumbar region.  A.R. 110-
14.  Lumbar spine x-rays showed evidence of a grade I anterolisthesis
of L5 over S1 and L4-5 disc space narrowing.  A.R. 113.  Dr.
Ganjianpour opined plaintiff can occasionally lift and carry 20
pounds, bend and crouch, frequently lift and carry 10 pounds, and can
stand and walk up to 6 hours in an 8-hour day.  Id.

On September 19, 2003, plaintiff was examined in the emergency
room at Kaiser Permanente, where he was diagnosed with a C6
compression fracture and L5-S1 spondylolysis with spondylolisthesis.
A.R. 143.  The plaintiff continued to receive treatment from Kaiser,
where he was further diagnosed with a grade I-II spondylolisthesis and
persistent neck and head pain, among other conditions.  A.R. 134-64.
An MRI of plaintiff's cervical, thoracic and lumbar spine was done on

---

[5]  Spondylolysis is the "dissolution of a vertebra; a
condition marked by platyspondylia [congenital flattening of the
vertebral bodies], aplasia [lack of development of an organ or
tissue] of the vertebral arch, and separation of the pars
interarticularis [the part of the lamina between the superior and
inferior articular processes of a lumbar vertebra]."  Dorland's
Illustrated Medical Dictionary at 113, 1328, 1401, 1684.

1  September 29, 2003, and the procedures showed:  the suggestion of a

2  stable compression fracture at C6, with about 20-30% vertebral body

3  height shortening, and a moderate broad-based likely disc protrusion

4  at C6-C7, with no canal stenosis; mild canal stenosis, with moderate

5  pseudo disc bulge at L5-S1; and a mild disc bulge at L4-L5.  A.R. 140-

6  41.  Lumbar spine x-rays taken October 10, 2003, showed bilateral pars

7  defects at L5 with Grade I-II spondylolisthesis of L5-S1, and cervical

8  spine x-rays showed compression of the C6 vertebral body with slight

9  kyphosis[6] at C5-C6, but no instability.  A.R. 135, 142, 146.  On

10 February 13, 2004, William W.S. So, M.D., examined plaintiff and

11 opined plaintiff should remain off work.  A.R. 144-47.

12

13                            **DISCUSSION**

14                               **III**

15     The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

16 review the Commissioner's decision denying plaintiff disability

17 benefits to determine if her findings are supported by substantial

18 evidence and whether the Commissioner used the proper legal standards

19 in reaching her decision.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th

20 Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

21

22     The claimant is "disabled" for the purpose of receiving benefits

23 under the Act if he is unable to engage in any substantial gainful

24 activity due to an impairment which has lasted, or is expected to

25 last, for a continuous period of at least twelve months.  42 U.S.C. §

26 _____

27     [6]  Kyphosis is "abnormally increased convexity in the
   curvature of the thoracic spine as viewed from the side;
28 hunchback."  Dorland's Illustrated Medical Dictionary at 951.

423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden
of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step
sequential evaluation process to be followed by the ALJ in a
disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in
the **Second Step**, the ALJ must determine whether the claimant has a
severe impairment or combination of impairments significantly limiting
him from performing basic work activities.  20 C.F.R. § 404.1520(c).
If so, in the **Third Step**, the ALJ must determine whether the claimant
has an impairment or combination of impairments that meets or equals
the requirements of the Listing of Impairments, 20 C.F.R. § 404,
Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth
Step**, the ALJ must determine whether the claimant has sufficient
residual functional capacity despite the impairment or various
limitations to perform his past work.  20 C.F.R. § 404.1520(f).  If
not, in **Step Five**, the burden shifts to the Commissioner to show the
claimant can perform other work that exists in significant numbers in
the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
the alleged onset of disability.  (Step One).  The ALJ then found
plaintiff has cervical and lumbar degenerative disc disease without

1    any evidence of radiculopathy (Step Two); however, he does not have an

2    impairment or combination of impairments that meets or equals a

3    Listing.  (Step Three).  The ALJ next determined plaintiff is unable

4    to perform his past relevant work.  (Step Four).  Finally, the ALJ

5    found plaintiff can perform a significant number of jobs in the

6    national economy; therefore, he is not disabled.  (Step Five).

7

8                                    **IV**

9         The plaintiff testified at the administrative hearing that he

10   experiences neck, back, left shoulder and left leg pain and daily

11   headaches, he is depressed most of the time, and he has memory and

12   concentration difficulties and has difficulty sleeping at night.  A.R.

13   171-73, 175.  The plaintiff averred he can sit or stand for

14   approximately 15 minutes before having to switch positions, and he can

15   walk for about 10 minutes without resting.  A.R. 174.  The plaintiff

16   also testified he lies down each day for 3-4 hours, A.R. 176-77, and

17   his prescription medication makes him drowsy, makes his mouth dry, and

18   exacerbates his headaches.  A.R. 174-75.

19

20        Once a claimant has presented objective evidence he suffers from

21   an impairment that could cause pain or other nonexertional

22   limitations, the ALJ may not discredit the claimant's testimony

23   "solely because the degree of pain alleged by the claimant is not

24   supported by objective medical evidence."  Bunnell v. Sullivan, 947

25   F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d

26   882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's

27   subjective complaints are not credible, he must make specific findings

28   to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v.

1  <u>Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001).  "Factors that the

2  adjudicator may consider when making such credibility determinations

3  include the claimant's daily activities, inconsistencies in testimony,

4  effectiveness or adverse side effects of any pain medication, and

5  relevant character evidence."  <u>Orteza v. Shalala</u>, 50 F.3d 748, 749-50

6  (9th Cir. 1995) (per curiam); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59

7  (9th Cir. 2002).  Furthermore, if there is medical evidence

8  establishing an objective basis for some degree of pain and related

9  symptoms, and no evidence affirmatively suggesting the claimant is

10  malingering, the ALJ's reasons for rejecting the claimant's testimony

11  must be "clear and convincing."  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680

12  (9th Cir. 2005); <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d

13  595, 599 (9th Cir. 1999).

14

15      Here, the ALJ found plaintiff's testimony was "not totally

16  credible" for several reasons.  First, the ALJ found that "[t]here is

17  no credible evidence of regular usage of strong medication to

18  alleviate pain that would significantly impair the [plaintiff's]

19  ability to do basic work activities."  A.R. 14-15.  However, this

20  finding is not supported by the record.  Rather, the evidence clearly

21  shows that Dr. Plasecki prescribed Skelaxin and Vicodin to plaintiff

22  for his pain, and he was later treated with Darvocet,[7] as well.  A.R.

23  43, 62, 84-85, 111.  Furthermore, although plaintiff reported taking

24  Advil for his neck and back pain when he was examined in the Kaiser

25  //

26

27      [7]  Darvocet is a "mild narcotic analgesic[] prescribed for
   the relief of mild to moderate pain, with or without fever."  <u>The</u>
28  <u>PDR Family Guide to Prescription Drugs</u> at 177.

8

emergency room on September 19, 2003, he was prescribed Flexeril,[8] Naprosyn[9] and Robaxin[10] once he began receiving treatment at Kaiser. A.R. 143, 146, 149, 160, 162.

Second, the ALJ found a lack of "evidence in the medical record of significant side effects" from any medication. A.R. 14. However, this finding also is belied by the record, including plaintiff's testimony that his medication makes him drowsy and worsens his headaches. A.R. 174-75. Moreover, drowsiness and headaches are well recognized side effects of Darvocet, Flexeril, Naprosyn, Robaxin, Skelaxin, and Vicodin. See Physician's Desk Reference at 1793; The PDR Family Guide to Prescription Drugs at 276, 590, 723. When a claimant testifies he is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard that testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony. . . ." Varney v. Sec. of Health & Human Servs., 846 F.2d 581, 585 (9th Cir. 1988). Here, although plaintiff testified he experienced side effects from //

---

[8]   "Flexeril is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls." The PDR Family Guide to Prescription Drugs at 276.

[9]   "Naprosyn, a nonsteroidal anti-inflammatory drug, is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis . . ., juvenile arthritis, ankylosing spondylitis . . ., tendinitis, bursitis, and acute gout. . . ." Id. at 435.

[10]   Robaxin "is prescribed, along with rest, physical therapy, and other measures, for the relief of pain due to severe muscular injuries, sprains and strains." Id. at 398, 590.

his medication, A.R. 174-75,[11] the ALJ did not further inquire regarding which medications were causing these side effects, how often plaintiff experienced the side effects, or the severity and duration of the side effects.  Therefore, the ALJ's finding that plaintiff has no side effects from his medication is without basis and cannot support the ALJ's negative credibility determination.  Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993); Varney, 846 F.2d at 585.

Third, the ALJ found plaintiff was not credible because he "declined any surgical intervention, instead opting for conservative management only."  A.R. 14.  However, plaintiff's decision to decline major spinal surgery, which according to Dr. Halderman helps only "a small percentage of patients[,]" A.R. 75, is not a proper ground to support the ALJ's negative credibility determination.  Cf. Nichols v. Califano, 556 F.2d 931, 933 (9th Cir. 1977) ("A claimant under a disability need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective. . . .  A patient may be acting reasonably in refusing surgery that is painful or dangerous.").

Fourth, the ALJ rejected plaintiff's excess pain testimony in part because plaintiff "has not required any extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other extensive or significant forms of treatment commonly prescribed for intense pain."

---

[11]   On January 27, 2003, plaintiff also completed a form in which he noted Darvocet, Skelaxin or Vicodin make him drowsy, tired and light-headed.  A.R. 43.

A.R. 14.  However, this finding, too, is not supported by the record.
To the contrary, plaintiff has been referred to an anesthesiologist
for "pain intervention[,]" A.R. 144, has been using an H-wave machine
to help with pain management, A.R. 73, 75, 144, and has received
several different courses of physical therapy, including aquatic
therapy.  A.R. 70, 84, 110, 148-51.

Fifth, the ALJ further found plaintiff was not credible because
"[a]t the hearing, the [plaintiff's] thoughts did not seem to wander
and all questions were answered alertly and appropriately."  A.R. 14.
However, "[t]he fact that a claimant does not exhibit physical
manifestations of prolonged pain at the hearing provides little, if
any, support for the ALJ's ultimate conclusion that the claimant is
not disabled or that his allegations of constant pain are not
credible."  Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984);
see also Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (per
curiam) (condemning ALJ's personal observations of claimant as "sit
and squirm" jurisprudence and noting inapplicability where there is
contrary evidence); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.
1984) (per curiam) (ALJ who observed claimant at administrative
hearing and noted claimant "answered questions alertly and his
thoughts did not wander" engaged in improper "sit and squirm"
jurisprudence).

Finally, the ALJ rejected plaintiff's excess pain testimony
because:

[plaintiff] has not established a medically determinable

11

1    impairment which would reasonably be expected to produce

2    such symptoms.  Indeed, he has consistently had no motor or

3    sensory deficits, and only mild limitations of motion of the

4    lumbar spine.  While his radiographs have shown some mild to

5    moderate findings, . . . [t]he [plaintiff] has no

6    abnormalities of gait, nor are any assistive devices

7    required.  While the [plaintiff] asserted a chronic and

8    debilitating pain syndrome of extended duration, it is noted

9    that he has exhibited no evidence of diffuse atrophy or

10   muscle wasting, common indicators of chronic pain.

11

12   A.R. 14.  An ALJ may not act as his own medical expert in interpreting

13   the significance of medical findings.  Day v. Weinberger, 522 F.2d

14   1154, 1156 (9th Cir. 1975); see also Nguyen v. Chater, 172 F.3d 31, 35

15   (1st Cir. 1999) (As a lay person, an ALJ is "simply not qualified to

16   interpret raw medical data in functional terms."); Rohan v. Chater, 98

17   F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation

18   to play doctor and make [his] own independent medical findings.").

19   Yet, in essence, this is exactly what the ALJ did in finding plaintiff

20   not credible based on the absence of certain medical signs and

21   symptoms, such as muscle atrophy, and this was improper.  Day, 522

22   F.2d at 1156; cf. Miller v. Sullivan, 953 F.2d 417, 422-23 (8th Cir.

23   1992) ("[A]lthough muscle deterioration may result from disuse,

24   disabling pain does not always result in muscle disuse.  Therefore,

25   the ALJ cannot discount Miller's claim simply because she does not

26   show an effect that other people suffering from disabling pain may

27   //

28   //

1  show."). Furthermore, even if otherwise proper, the above-cited

2  paragraph, by itself, would not support a negative credibility

3  determination. <u>See</u> <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir.

4  2001) ("The fact that a claimant's testimony is not fully corroborated

5  by the objective medical findings, in and of itself, is not a clear

6  and convincing reason for rejecting it."); <u>Cotton v. Bowen</u>, 799 F.2d

7  1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to

8  discredit excess pain testimony solely on the ground that it is not

9  fully corroborated by objective medical findings.").

10

11     For all these reasons, the ALJ's findings discounting plaintiff's

12  credibility are unsupported by substantial evidence based on the

13  record as a whole. <u>Reddick</u>, 157 F.3d at 724.

14

15                                   **V**

16     When the Commissioner's decision is not supported by substantial

17  evidence, the Court has authority to affirm, modify, or reverse the

18  Commissioner's decision "with or without remanding the cause for

19  rehearing." 42 U.S.C. § 405(g); <u>McCartey v. Massanari</u>, 298 F.3d 1072,

20  1076 (9th Cir. 2002). "Generally when a court . . . reverses an

21  administrative determination, 'the proper course, except in rare

22  circumstances, is to remand to the agency for additional investigation

23  or explanation.'" <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir.

24  2004) (citations omitted). Since there are "insufficient findings as

25  to whether [plaintiff's] testimony should be credited as true," remand

26  is the appropriate remedy. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876

27  (9th Cir. 2003); <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir.

28  //

13

2003) (affirming court's remand based, in part, on ALJ's failure to properly reject claimant's subjective complaints).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE: ___Nov. 18, 2005___        ___/s/ Rosalyn M. Chapman___
                                  ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\04-1373.MDO
11/18/05